UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY HERRICK,

        Plaintiff,                      CIVIL ACTION NO. 13-10836

    v.                              DISTRICT JUDGE GEORGE CARAM STEEH

                                      MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 8, 12)**

Plaintiff Kimberly Herrick challenges the Commissioner of Social Security's ("the Commissioner") final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 8, 12). Judge George Caram Steeh referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

**I.    RECOMMENDATION**

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.    DISCUSSION**

    *A.    Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.   *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III.  REPORT

#### A.  *Administrative Proceedings*

Plaintiff applied for disability insurance benefits on September 8, 2010 and supplemental security income on September 10, 2010.  In both applications, Plaintiff alleged she became disabled on December 18, 2009 (Tr. 18).  After the Commissioner initially denied Plaintiff's application, she appeared with counsel for a hearing before ALJ Elliott Bunce, who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not disabled (Tr. 18-26).  Plaintiff requested an Appeals Council review (Tr. 14).  On January 3, 2013, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-3).

#### B.  *ALJ Findings*

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her alleged onset date in December of 2009 (Tr. 20).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: seizure disorder, obesity, and bipolar disorder (Tr. 20).

At step three, the ALJ found that Plaintiff did not have impairments that met or medically equaled one of the listings in the regulations (Tr. 20).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> work that does not require[] exertion above the light level . . .; [] exposure to hazards[] such as heights, dangerous machinery, and driving; [] strict production quotas, defined as the requirement to produce a specified number of units of work in a specified period of time; or[,] interaction with the public to perform job duties.

(Tr. 23).

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a home-health aide or office manager (Tr. 25).

At step five, the ALJ found Plaintiff was not disabled, because she could perform a significant number of jobs available in the national economy such as dishwasher, general office clerk, or packer (Tr. 25).

### C.  Administrative Record

#### 1.  Plaintiff's Hearing Testimony and Statements[1]

Plaintiff is 37 years old; she has a high school diploma (Tr. 34-35). Plaintiff suffers from epilepsy, bipolar disorder, trouble concentrating, and trouble with her memory (she misplaces things, and forgets appointments and her son's school functions) (Tr. 35, 37). Plaintiff's epilepsy forced her to stop working and resulted in the suspension of her driver's license (Tr. 35-36). She has petit mal seizures daily;[2] her last grand mal seizure was in December of 2009 (Tr.

---

[1] Plaintiff's testimony before the ALJ reflects her subjective view of her medical condition, abilities and limitations. It is set forth from Plaintiff's perspective; it is not a factual finding of the ALJ or this Magistrate Judge.

[2] "A petit mal seizure is the term commonly given to a staring spell, most commonly called an 'absence seizure.' It is a brief (usually less than 15 seconds) disturbance of brain function due to abnormal electrical activity in the brain." *See* http://www.nlm.nih.gov/medlineplus/ency/article/000696.htm (last visited October 7, 2013).

36).[3] When Plaintiff has a petit mal seizure, her mind goes blank and, if she can talk at all, her words do not make sense. After the seizure, Plaintiff is tired for three to four hours (Tr. 36-37). Plaintiff's medication also makes her drowsy and tired (Tr. 37). However, despite her limitations, she can wash dishes, do laundry, and cook (Tr. 36).

### 2. Relevant Medical Evidence

Plaintiff experienced her first grand mal seizure on October 19, 2009; her son witnessed her pass out and have convulsions in her bed (Tr. 224, 226, 233). The seizure lasted less than five minutes, but Plaintiff lost consciousness (Tr. 226, 233). Family members arrived within 15 minutes and found Plaintiff lethargic and slow (Tr. 233).

On November 9, 2009, Plaintiff visited Faisal I. Ahmad, M.D. for a neurological follow-up. Plaintiff reported that two to three times a day, without warning, she experienced brief episodes where she could not breathe, her mind went blank, and she had trouble speaking (Tr. 253).

On December 19, 2009, Plaintiff had a grand mal seizure while driving, which lasted several seconds. She hit another car, then a pole (Tr. 206, 212). Plaintiff does not recall the accident because she lost consciousness (Tr. 206, 212).

On December 20, 2009, it was noted that Plaintiff had a seizure while talking on the phone; it lasted several minutes and prohibited Plaintiff from responding to her surroundings (Tr. 206). She was diagnosed with uncontrolled seizure disorder and instructed not to drive for at least six months (Tr. 203).

---

[3] "A grand mal seizure – also known as a tonic-clonic seizure – features a loss of consciousness and violent muscle contractions. It's the type of seizure most people picture when they think about seizures in general." *See* http://www.mayoclinic.com/health/grand-mal-seizure/DS00222 (last visited October 7, 2013).

On December 22, 2009, Plaintiff reported to Dr. Ahmed for a neurological follow-up. She was diagnosed with partial epilepsy and prohibited from driving until she no longer experienced seizures (Tr. 252).

In January of 2010, Plaintiff had a brief episode of expressive aphasia (Tr. 249).[4] Plaintiff was still experiencing seizures on April 6, 2010 (Tr. 263).

On May 3, 2010, Plaintiff reported that she had one episode a month in which she had trouble speaking and her mind went blank (Tr. 277).

On July 13, 2010, Parmanand Khandelwal, M.D., diagnosed Plaintiff with stable seizure disorder (Tr. 338). The following month, Dr. Khandelwal noted that Plaintiff had not had any seizures, only spells (Tr. 336).[5]

On September 14, 2010, Henry Hagenstein, D.O., P.C., evaluated Plaintiff. Plaintiff's mother reported that the majority of Plaintiff's seizures were "mini": without warning, Plaintiff would develop a blank stare and difficulty speaking for three to five minutes, followed by anxiousness and nervousness. Dr. Hagenstein diagnosed Plaintiff with localization-related (focal) (partial) epilepsy and epileptic syndromes with complex partial seizures (Tr. 290, 292).

---

[4]"Aphasia is a disorder caused by damage to the parts of the brain that control language. It can make it hard for you to read, write, and say what you mean to say. It is most common in adults who have had a stroke. Brain tumors, infections, injuries, and dementia can also cause it. The type of problem you have and how bad it is depends on which part of your brain is damaged and how much damage there is. [With] [e]xpressive aphasia - you know what you want to say, but you have trouble saying or writing what you mean[.]" *See* http://www.nlm.nih.gov/medlineplus/aphasia.html (last visited October 8, 2013).

[5]"Sometimes episodes may well be seizure phenomena, although they cannot be proven to be so on EEG. This is particularly important when such symptoms as major episodes of mood lability lasting seconds happen or confusional episodes occur or when a symptom like an unexplained rising epigastric sensation occurs on its own. These can be classified as atypical spells under paroxysmal neurobehavioral disorder (PND) because the actual phenomena may not have been proven to be seizures." *See* http://www.pni.org/neuropsychiatry/seizures/epilepsy/epilepsy_psychiatry.html (last visited October 11, 2013).

On November 15, 2010, Plaintiff reported that she had not had a mini seizure recently; the medication seemed to have resolved the issue. Dr. Hagenstein diagnosed Plaintiff with: (1) localization-related (focal) (partial) epilepsy and epileptic syndromes with complex partial seizures; and, (2) grand mal seizure disorder (Tr. 288-289).

On December 14, 2010, Pamela J. Griffin, M.A., LLP., diagnosed Plaintiff with bipolar II disorder, epilepsy, and borderline personality disorder (Tr. 302).

On January 18, 2011, Plaintiff reported that her last petit mal seizure was on January 15, 2011, but she was afraid to take a shower alone due to the possibility of having a seizure (Tr. 304-305).

On February 17, 2011, the frequency of Plaintiff's mini seizures increased (Tr. 311).

Dr. Hagenstein re-evaluated Plaintiff on March 7, 2011. Plaintiff reported that she had three seizures in January and four in February, each lasting approximately five minutes. During seizures, Plaintiff's mind went blank and she did not make any sense; after the seizures, Plaintiff was tired for several hours. Dr. Hagenstein diagnosed Plaintiff with localization-related (focal) (partial) epilepsy and epileptic syndromes with complex partial seizures (Tr. 339-340).

On September 20, 2011, Plaintiff reportedly had daily episodes of staring spells and petit mal seizures (Tr. 412).

Plaintiff's treating physician completed a mental medical source statement on October 15, 2011.[6] The doctor found Plaintiff mildly limited in her ability to relate and interact with supervisors and co-workers; understand, remember, and carry out an extensive variety of technical and complex job instructions; and, maintain concentration and attention for at least

---

[6]While the doctor's name is illegible, the form is titled "Medical Source Statement (Mental) For Treating Physician to Complete" (Tr. 373).

two-hour increments. She was moderately limited in her ability to deal with the public, and withstand stress and pressures associated with an eight-hour workday (Tr. 373).

Plaintiff continued to report petit mal seizures on February 10, 2012 (Tr. 389).

### 3. Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education, and vocational experience who is limited to light exertional work. The individual could not be exposed to heights, dangerous machinery, or driving; be required to produce a specified number of units in a specified period of time; or, interact with the public (Tr. 41). The VE testified that such an individual could perform work as a dishwasher, general office clerk, or packer (Tr. 41-42). The following exchange also occurred between Plaintiff's attorney and the VE:

> ATTY: How many absences are typically allowed say during a month for these types of employment?
>
> VE: Generally no more than one time per month.

(Tr. 42).

### D. *Plaintiff's Claim of Error*

Plaintiff's overarching argument is that the ALJ erred in his credibility determination and, in turn, presented an inaccurate hypothetical question to the VE.[7] According to Plaintiff,

---

[7]Plaintiff also attempts to argue that the ALJ erred by discrediting her treating source's opinion (Dkt. No. 8 at pp. 13-15), but no treating source opined that Plaintiff was disabled or would miss work more than one day a month.

"her statements concerning the intensity, persistence and limiting effects [are] supported by the medical records" (Dkt. No. 8 at p. 10). Specifically, Plaintiff argues that "due to the fact that her medical record clearly indicates that she is having . . . seizures one time per month at least," the ALJ should have included in the hypothetical to the VE that Plaintiff would exceed the amount of allowable absences per month for the identified jobs and, consequently, found Plaintiff disabled (*Id.* at p. 12).

Plaintiff bears the burden to establish a prima facie case of disability. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). At step five, the burden shifts to the Commissioner to show that Plaintiff has the capacity to perform work in the national economy. *Id*. This burden must be met with a finding supported by substantial evidence. *Parley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987). Substantial evidence may be shown through reliance on a VE's testimony in response to a hypothetical question, as long as the question accurately describes Plaintiff's physical and mental impairments and takes Plaintiff's limitations into account. *Id.* at 779-80. The hypothetical question need not incorporate limitations the ALJ does not find credible. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993). And, "[c]redibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ." *Strevy v. Comm'r of Soc. Sec.*, No. 1:12-cv-634, 2013 WL 54472803, at *8 (W.D. Mich. Sept. 30, 2013) (citing *Gooch v. Sec'y of HHS*, 833 F.2d 589, 592 (6th Cir. 1987)). This Magistrate Judge finds the ALJ provided sufficient reasons for rejecting Plaintiff's testimony that she suffered petit mal seizures daily.

In his decision, the ALJ stated that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to

the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 23). The ALJ further explained that "[Plaintiff] testified to petit mal seizures daily. However, her treatment records do not document this very high frequency" (Tr. 24). For example, in July of 2010, Plaintiff's seizure disorder was stable. In August of 2010, Plaintiff reported that she had not had any seizures for a month. In November of 2010, Plaintiff reported no recent seizures. Plaintiff reported that she only had three seizures in January of 2011 and four in February of 2011. Significantly, Plaintiff has not suffered a grand mal seizure since December of 2009 (Tr. 24). And, Plaintiff's petit mal seizures – which Plaintiff reports last no more than a few minutes – would not necessarily require her to miss work.[8] As such, the ALJ was not required to pose a hypothetical to the VE that allowed the individual to be absent from work more than once a month.

Based on the VE's testimony, this Magistrate Judge finds substantial evidence supports the ALJ's finding that Plaintiff could perform light work with the additional restrictions provided in the RFC, and his decision should not be disturbed on appeal.[9]

## IV.   CONCLUSION

---

[8] Plaintiff never testified – nor does anything in the record indicate – that her seizures, however frequent, ever required her to miss work. The evidence shows Plaintiff's seizures were infrequent and brief.

[9] Notably, after Plaintiff experienced her first grand mal seizure in October of 2009, she continued to work 72 hours a week as a home health care aid until at least December of 2009 (Tr. 163). Plaintiff also received unemployment benefits between 2009-2010 (Tr. 155), which is "inherently inconsistent" with Plaintiff's social security application. *Workman v. Comm'r of Soc. Sec.*, 105 F. A'ppx 794, 801-02 (6th Cir. 2004) ("[t]here is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work") (quotation marks omitted). Finally, Plaintiff's testimony was inconsistent with the record: Plaintiff testified that she stopped working due to epilepsy (Tr. 36), but she reported to Darlene Doerscher, M.A., LLP that she stopped working because her client died (Tr. 304).

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing.  E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

                                              s/Mark A. Randon
                                              Mark A. Randon
                                              United States Magistrate Judge

Dated:  October 11, 2013

<u>*Certificate of Service*</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, October 11, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*

*Case Manager for Magistrate Judge Mark A. Randon*